## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## ABILENE DIVISION

|  |  |  |
|---|---|---|
| **KARLA I. ALEXANDER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 1:04-CV-0269-C** |
| | § | **ECF** |
| | § | **Referred to the U.S. Magistrate Judge** |
| **JO ANNE B. BARNHART,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION

**THIS MATTER** is before the court upon Plaintiff's complaint filed December 20, 2004, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's application for a period of disability and disability insurance benefits under Title II of the Social Security Act.  Plaintiff filed a brief in support of her complaint on June 2, 2005, and Defendant filed her brief on July 1, 2005.  The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment.  This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge affirm the Commissioner's decision and dismiss the complaint with prejudice.

### I.    STATEMENT OF THE CASE

Plaintiff filed an application for a period of disability and disability insurance benefits with a protective filing date of February 19, 2003 , alleging disability beginning July 13, 2002.  Tr. 17, 64-66.  Plaintiff's application was denied initially and upon reconsideration.  Tr. 17, 36-39, 42-46.

Plaintiff filed a Request for Hearing by Administrative Law Judge on July 10, 2003, and this matter came for hearing before the Administrative Law Judge ("ALJ") on April 15, 2004. Tr. 17, 34-35, 394-417. Plaintiff, represented by an attorney, testified in her own behalf. Tr. 17, 397-410. Carol Bennett, a vocational expert ("VE"), appeared and testified as well. Tr. 17, 410-16. The ALJ issued a decision unfavorable to Plaintiff on April 30, 2004. Tr. 14-25.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that Plaintiff met the disability insured status requirements on July 13, 2002, through the date of his decision and that Plaintiff had not engaged in substantial gainful activity at any time since July 13, 2002. Tr. 17-18. He found that Plaintiff has "severe" impairments, including severe degenerative disk disease. Tr. 18. He further found that Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id.*

The ALJ discussed the medical evidence of record, noting that Plaintiff has a history of thoracic and cervical pain. *Id.* He noted that an MRI showed disk protrusions at C4-5 and C5-6, and Plaintiff underwent a left C5-6 hemilaminectomy, foraminotomy, facetectomy, and nerve root decompression in May 2000. *Id.* He noted that a subsequent MRI performed in July 2000 revealed a small disk protrusion at C5-6, which still caused some encroachment on the exiting nerve root, and an MRI done in September 2000 showed multiple degenerative changes with small disk bulges and a small protrusion at L4, as well as a large disk bulge at L5-S1, neither of which caused any nerve root compression. *Id.* He also noted the remarks of a neurologist who examined Plaintiff in October 2000, as well as the impressions upon examination. *Id.*

The ALJ also discussed Plaintiff's treatment by a pain management specialist which began in March 2002. *Id.* He noted Plaintiff's report of back pain which was "quite limiting" and had not

responded to treatment. *Id*. The ALJ noted the impressions upon examination and Plaintiff's treatment with sacroiliac joint injections and physical therapy. *Id*. Plaintiff reported increased tenderness in April 2002 and was treated with lumbar epidural steroid injections. Tr. 19. The ALJ discussed the findings from an MRI performed in mid-April 2002 which showed degernative changes and disk protrusions at multiple levels. *Id*. He discussed further testing and Plaintiff's neurosurgical evaluation and treatment. *Id*. The ALJ noted that Plaintiff underwent decompressive laminectomies with decompression, bilateral foraminotomies, and posterior lumbar interbody fusions at L3-4, L4 5, and L5 S1. *Id*. An MRI indicated scar tissue at C5-6. *Id*. The ALJ discussed Plaintiff's recover from this surgery and noted that upon the recommendation of her doctor, Plaintiff underwent additional surgery in September 2002. *Id*. The ALJ also discussed Plaintiff's recovery from this surgery and noted that although her neurosurgeon indicated that she had "done extremely well" and was having little discomfort in her lower back, Plaintiff reported significant ongoing pain in her neck. Tr. 20. Another MRI indicated a new disk protrusion at C4-5, and in December 2002 Plaintiff underwent an anterior cervical diskectomy with bilateral foraminotomies and anterior cervical arthodesis at C3-4. *Id*. The ALJ noted that despite findings indicating that by January 2003 Plaintiff's fusion appeared to be in a good position from C4 to C6, Plaintiff's neurosurgeon wrote a letter indicating that Plaintiff had a "severe and progressive form of degenerative disk disease" which would likely be a "continuing and disabling problem." *Id.* This neurosurgeon wrote a similar letter in February 2003 and further opined that Plaintiff's condition "should qualify [her]as being disabled on a permanent basis." *Id*. The ALJ indicated that he did not accept either of these opinions of Plaintiff's treating neurosurgeon as to disability, finding that they were not corroborated by clinical evidence nor did the record indicate a continuous 1–month period of disability beginning on July 13, 2002, the alleged onset date. Tr. 20.

The ALJ discussed Plaintiff's further treatment by her family practitioner in May 2003 and the medications which she was prescribed for her complaints of pain. Tr. 21. He noted that Plaintiff's family practitioner wrote a brief note in March 2004 indicating that Plaintiff suffers from debilitating cervical and lumbar spine pain and experienced chronic arthritic knee pain, while asking that this be considered with regard to her upcoming disability hearing. *Id*. The ALJ declined to accept this opinion as to disability, noting the absence of clinical evidence demonstrating chronic arthritic knee pain, the lack of an examination by this doctor with regard to Plaintiff's cervical and lumbar spine, and the lack of any treatment for such impairment(s). *Id*.

The ALJ found that the objective medical evidence failed to establish that Plaintiff's impairments met or equaled in severity the requirements of § 1.04A of the Listing of Impairments. *Id*. He further found that Plaintiff has an underlying medically determinable impairment which could reasonably cause the symptoms alleged. However, he found that based on the evidence in the record, Plaintiff's statements concerning her impairments and their impact on her ability to work were not entirely credible insofar as she alleged that she was completely unable to perform any work activity. Tr. 22. The ALJ discussed Plaintiff's complaints of pain and impairments including the ability to lift only 10 pounds, to walk 1 block, to sit for 30 minutes and stand for 10 minutes, and difficulty holding her hand above shoulder level. *Id*. He also noted her testimony of side effects from her medication including sleepiness from her muscle relaxant and nausea. *Id*. He noted that despite these subjective allegations, Plaintiff described daily activities including watching television, reading, doing light cleaning, driving short distances, and shopping as long as someone carries the groceries for her. *Id*. He also noted that the record indicated virtually no medical care since March 2003 beyond routine medication refills from Plaintiff's family practitioner. *Id*. The ALJ specifically found that Plaintiff's subjective complaints suggested a greater degree of impairment than was established by the objective medical evidence, her reports of her activities, and the types of

medications used.  *Id*.  He also noted that Plaintiff had not attempted further conservative measures after her surgeries.  *Id*.  The ALJ noted that Plaintiff did not continue to see her neurosurgeon for 12 continuous months after her alleged disability onset date.  Tr. 22-23.

The ALJ found that Plaintiff could not return to her past relevant work as a license clerk, an office manager, a librarian, or a medical records clerk.  Tr. 24.  He noted that Plaintiff was considered a "younger individual" with a 12th grade education.  20 C.F.R. §§ 404.1563, 404.1564.

The ALJ found that Plaintiff retained the RFC to perform, on a continuing and sustained basis, the exertional and nonexertional requirements of sedentary work activity, limited to jobs that do not require more than occasional stooping, balancing, crouching, or climbing stairs or ramps; that do not require crawling, kneeling, or climbing scaffolds, ladders, or ropes; that do not require sitting without the opportunity to occasionally stand in addition to a lunch and the normal legal breaks during the work day; that do not require walking more than 10 minutes at one time without the opportunity to sit; that do not require working above shoulder level with the upper extremities; that do not require pushing, pulling, or performing extended reaching with her left (non-dominant) upper extremity; that do not require more than occasional up and down, or side to side, neck movements; and that do not require looking down for periods of longer than 10 minutes without the opportunity to look up and relax the neck.  Tr. 23.

Having found that Plaintiff could not perform the full range of sedentary work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite her severe impairments.  Tr. 24.  The ALJ relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy, including the jobs of receptionist, with 10,000 jobs in Texas and 200,000 nationally. *Id*.  The ALJ, therefore,

concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision.  Tr. 25.

Plaintiff submitted a Request for Review of Hearing Decision/Order on July 1, 2004.  Tr. 11-12.  The Appeals Council set aside its denial of request for review, considered additional information submitted by Plaintiff, and based upon this additional information, denied Plaintiff's request for review.  Tr. 5-10.  The ALJ's decision, therefore, became the final decision of the Commissioner.

On December 20, 2004, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.    STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g).  The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).  The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful

activity.  Substantial gainful activity is defined as work activity involving significant physical or

mental abilities for pay or profit. *Newton,* 209 F.3d at 452; s*ee* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R.

§ 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled

within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271;

*Newton*, 209 F.3d at 453.  In this case, the ALJ found at step 5 that Plaintiff was not disabled

because she retained the ability to perform work in the national economy.  Tr. 25.

## III.   DISCUSSION

Plaintiff claims that the ALJ's determination of Plaintiff's RFC is not supported by

substantial evidence because the ALJ failed to consider the entire evidence in the record; failed to

properly consider the opinions of Plaintiff's treating physicians with regard to Plaintiff's

impairments and their effects on her ability to work; failed to consider all of the limitations imposed

by Plaintiff's impairments in determining her RFC; and failed to properly evaluate the testimony of

the Plaintiff.

**A.     Whether the ALJ's determination of Plaintiff's RFC is supported by substantial
         evidence.**

Plaintiff argues that the ALJ's determination was not supported by substantial evidence in

the record.  She alleges that the ALJ failed to considered all of the evidence in the record, and failed

to give proper weight to the statements of her treating physicians.  She argues that the ALJ

improperly considered only the evidence which supported his conclusion and did not appropriately

consider the limitations imposed by her impairments and her subjective allegations.  The ultimate

issue is whether the ALJ's decision is supported by substantial evidence.  The court's review of the

denial of benefits is limited to considering whether the decision is supported by substantial evidence

in the record and whether the proper legal standards were applied. *Higginbotham v. Barnhart*, 405

F.3d 332, 335 (5th Cir. 2005)(citing *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990)).  The

court, therefore, must review the record to determine whether it "yields such evidence as would

allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378,

393 (5th Cir. 2000). In doing so, however, the court does not examine only the evidence favorable

to the Commissioner; it also examines contrary evidence.  *Higginbotham*, 405 F.3d at 335 (citing

*Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992)).[1]

Plaintiff argues that the ALJ inappropriately failed to considered all of the evidence in the

record and made certain erroneous findings and conclusions.  Plaintiff first argues that the ALJ erred

in finding that there was an absence of evidence in the record to support her complaints of knee pain.

The record indicates that at the hearing, the ALJ asked Plaintiff about her knee issues.

Plaintiff testified that her knee problems had begun within the last year. Tr. 397.  Plaintiff testified

that her knees had begun bothering her after her surgery in December 2002. Tr. 398.  In his opinion,

the ALJ noted that in May 2003 Plaintiff was prescribed Vioxx and other medications for her pain

complaints. Tr. 21.  He noted that although Plaintiff's family practitioner had indicated that she has

chronic arthritic knee pain, right greater than left, there were no objective clinical findings

supporting a conclusion that Plaintiff has chronic arthritic knee pain.  *Id*.

The record contains several references to Plaintiff's complaints of knee pain.  In a progress

note dated February 14, 2002, Dr. Allen Schultz indicates that Plaintiff complained of knee pain.

Tr. 329.  However, Plaintiff indicated to her doctor that she did not wish to pursue any further

treatment at that time because the pain was "not that severe." *Id*.  Plaintiff reported knee pain on

---

[1]     The court notes that it has considered the entire record in this matter, including the
additional voluminous evidence presented to and considered by the Appeals Council, which was not
before the ALJ when he made his decision.  *See Higginbotham*, 405 F.3d 337-38 (noting that
evidence submitted for the first time to the Appeals Council is part of the record to be considered
and addressed by the court).

August 8, 2002, x-rays were ordered, and her Vioxx prescription was refilled.  Tr. 336.  Plaintiff saw

Dr. Shultz on August 21, 2003, for treatment of pain in her knees.  Tr. 341.  Dr. Shultz noted that

x-rays done a year previously had indicated some osteoarthritic changes, which Plaintiff wanted to

try to treat with Synvisc.  *Id.*  The record indicates that Plaintiff was treated by Dr. Schultz in

September and October 2003 for pain to her right knee.  Tr. 344-50.  The progress notes indicate that

Plaintiff was treated for arthritis and pain in the right knee.  Tr. 347. Plaintiff denied any locking or

giving out and reported that her pain was between 5 and 6 of 10.  Tr. 344.  Plaintiff was given a

series of three injections to her knee.  Tr. 344-50.  On October 15, 2003,  Dr.  Shultz indicated that

Plaintiff presented for her third injection to the right knee and further noted that she "has tolerated

Synvisc injections without difficulty."  Tr. 349.

While the record indeed contains references to Plaintiff's complaints of knee pain, an issue

about which the ALJ questioned her during the administrative hearing, the record does not indicate

that Plaintiff's knee pain imposed limitations which exceeded those limitations incorporated into the

RFC finding. The ALJ incorporated limitations to jobs which require no more than occasional

stooping, balancing, crouching, or climbing stairs and ramps; no crawling, kneeling, or climbing

scaffolds, ladders, or ropes; no sitting without the opportunity to stand occasionally; and  no walking

more than 10 minutes at a time.   He further limited Plaintiff to jobs which do not require working

above shoulder level with the upper extremities; which do not require pushing, pulling, or

performing extended reaching repetitively with the left (non-dominant) upper extremity; which do

not require more than occasional up and down or side to side neck movements; and which do not

require looking down for periods of longer than 10 minutes without the opportunity to look up and

relax the neck.   Tr. 23.

Plaintiff testified to the following: she has trouble holding her neck in any position for any

length of time, particularly looking up or down; she has a problem with side to side movement of

her neck; she can lift about 10 pounds; she can walk the length of a block and back or sometimes around the block on a good day; she can stand for 10 minutes while cooking a meal; and she can sit anywhere from 30 minutes to an hour. Tr. 400-01, 403-06. The RFC assessment of the ALJ incorporates limitations which reflect Plaintiff complaints of being limited to lifting no more than 10 pounds; of having trouble with up and down and side to side movements of her neck; of being able to walk no more than 10 minutes without the opportunity to sit; and problems with using her upper extremities above shoulder level.

The court will not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that she was prejudiced by the deficiencies she alleges. *Carey v. Apfel*, 230 F.3d 131, 143 (5th Cir. 2000)(citing *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996)). Procedural improprieties will constitute a basis for remand "only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Plaintiff must thus demonstrate prejudice arising from the alleged error to be entitled to relief. *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981)(*per curiam*). The court, therefore, considers whether the ALJ's statement with regard to Plaintiff's knee pain was prejudicial.

While the RFC assessment does not specifically address Plaintiff's knee pain, the record does not contain any information suggesting any further limitations imposed by Plaintiff's knee pain. The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE that he did not find to be supported in the record. *See Morris*, 864 F.2d at 336. None of Plaintiff's treating physicians indicated further specific limitations imposed by Plaintiff's knee pain, and Plaintiff did not indicate further limitations arising from her knee pain in her testimony. Although the record contains evidence indicating that Plaintiff experienced knee pain, the ALJ's statement indicating that there was an absence of such evidence does not constitute reversible error, given that

there is no substantial evidence to demonstrate that the limitations incorporated into the RFC finding did not accommodate any limitations imposed by Plaintiff's knee pain.

Plaintiff further argues that the ALJ erred in making his RFC assessment by failing to incorporate limitations imposed by the side effects of her medication.  Plaintiff testified that the muscle relaxers that she takes cause drowsiness and that one pain medication makes her sick to her stomach.  Tr. 410.  However, nothing in the record indicates that Plaintiff's apparent nausea or drowsiness was of such severity as to otherwise impose limitations on her functional capacities.

Plaintiff also argues that the ALJ failed to incorporate any limitations imposed by her thumb pain. The record demonstrates that an x-ray was taken on November 6, 2002, which showed sclerotic changes in the first distal phalanx, with no acute injury, possibly related to an old injury. Tr. 230.  In her Daily Activity Questionnaire, Plaintiff indicated that her left thumb caused pain when using her hands. Tr. 89. The ALJ incorporated a limitation on pushing, pulling, or performing extended reaching repetitiously with the left (nondominant) upper extremity in his RFC assessment. Tr. 23.  Plaintiff testified that she was advised not to lift more than 10 pounds and that she tried to do lifting only with her right hand.  Tr. 403.  The record does not indicate that Plaintiff experienced additional limitations as a result of her left thumb, and the limitation noted was reflected in the ALJ's RFC assessment.  The record also does not indicate specific limitations imposed by the side effects of Plaintiff's medications.  The ALJ's failure to incorporate any limitations into his RFC assessment based on Plaintiff's thumb pain and alleged drowsiness from certain medications, as well as nausea, also does not constitute error given the dearth of evidence in the record indicating that the side effects and thumb pain imposed any additional limitations on Plaintiff.

Plaintiff further claims that the ALJ erred in stating that there was no evidence indicating that her impairments met or equaled in severity § 1.04A of the Listing of Impairments.  Section 1.04A of the Listing of Impairments requires that the Plaintiff show "[e]vidence of nerve root compression

characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." *See* 20 C.F.R. Part 4, Subpt. P, App. I.  Plaintiff points to several references in the record from 2002 consistent with a C6 radiculopathy, an L5 distribution, a C6 distribution, and MRIs demonstrating nerve root or spinal encroachment.  The record demonstrates that the ALJ specifically discussed in his opinion the MRI in July 2000 which revealed a small disk protrusion at C5-6 which caused some encroachment on the exiting nerve root, Dr. Richard E. George's July 2002 findings (including Plaintiff's normal neurologic examination), and the September 2002 complaints of mild sensory changes in an L5 distribution, as well as left-sided sensory changes of the upper extremity in a C6 distribution.  Tr. 18-19.

Contrary to Plaintiff's argument, the ALJ did not exhibit a "complete failure to recognize the evidence in this case."  Pl. Brief at 19.  Rather, the ALJ discussed each of the points of evidence that Plaintiff highlights in her brief.  Moreover, the evidence that Plaintiff points to does not demonstrate that each of the criteria of Listing 1.04 were met.  Although Plaintiff noted that Dr. Mark S. Maxwell's impression in March 2000 was of a double crush phenomenon on the left C5-6 and left median nerve with radiculopathy in the left C5-6, Dr. Daniel J. M. Vaughn noted in October 2000 that an EMG showed that the left C6 radiculopathy had improved significantly with surgical measures.  *Compare* Tr. 131 with 140. In addition, Dr. Maxwell had noted on September 26, 2000, that the MRI of Plaintiff's lumbar spine indicated some aging and wear and tear on some of the disks, but there was nothing compressing the nerve roots there.  Tr. 121.  Although Dr. George noted in July 2002 that Plaintiff experienced pain in an L5 type of distribution, Dr. Edward Brandecker, who treated Plaintiff for consideration of a lumbar discography, noted no evidence of radiulopathy on May 30, 2002.  Tr. 272, 294.  Dr. Brandecker noted upon examination that Plaintiff's pin prick

sensation was intact through the lower extremities and also noted a negative straight-leg raising test. Tr. 294.  On June 17, 2002, Dr. Alexis P. Shelokov noted upon examination that Plaintiff was neurologically intact, straight leg raising sign was negative, and no lower extremity atrophy or weakness was noted.  Tr. 186, 324.  However, Dr. George indicated in his July 1, 2002, letter that Plaintiff had a positive straight leg raising test on either extremity at 90°.  Tr. 272.   After Plaintiff had undergone surgery including an anterior cervical diskectomy and fusion at C5-6, Dr. George noted on November 6, 2002, that Plaintiff was still having discomfort, although her pain had improved; that Plaintiff's wounds had healed well and she showed good strength; and that she was achieving a solid arthodesis.  Tr. 231.  In a letter to Dr. Schultz dated December 13, 2002, Dr. George indicated that Plaintiff had done extremely well, and her lower back was causing very little discomfort, although she was experiencing ongoing pain from her neck.  Tr. 225.  However, on December 18, 2002, Dr. George noted a new rupture at C4-5 with impaction on the right.  Tr. 224. Dr. George indicated that Plaintiff underwent an anterior cervical diskectomy with bilateral foraminotomies on December 23, 2002.  Tr. 216.  On January 8, 2003, Dr. George advised Plaintiff that x-rays indicated that her cervical diskectomy site "looks quite good" and opined that she was achieving a solid arthrodesis.  Tr. 214.  Yet in a letter dated January 10, 2003, and again on February 12, 2003, and on February 21, 2003, Dr. George opined that Plaintiff was disabled and prevented from working.  Tr. 208, 210, 212.  On February 21, 2003, Dr. Shultz noted that Plaintiff was neurologically intact.  Tr. 338.

In order to meet a Listing, Plaintiff must provide medical findings that support all of the criteria for the Step 3 impairment determination.  *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990).  Unless expected to result in death, the impairment must have lasted or must be expected to last for a continuous period of at least 12 months.  20 C.F.R. § 404.1509.  At step 3, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough

to preclude any gainful activity.  *Loza*, 219 F.3d at 390.  If the claimant's impairment matches or is equal to one of the listed impairments, she qualifies for benefits without further inquiry.  20 C.F.R. §§ 404.1520(d).  The ALJ ultimately concluded that the evidence as a whole did not establish functional limitations lasting at least 12 consecutive months from July 13, 2002, the alleged onset date of disability.  Tr. 21.  The ALJ also determined that Plaintiff's impairment(s) did not meet or equal the criteria of § 1.04 of the Listing of Impairments.  The evidence in the record which Plaintiff identifies does not provide medical findings for *each* of the criteria of § 1.04 of the Listing of Impairments.  While there are references in the record to instances where certain of the criteria were met, the record does not demonstrate that there were medical findings to demonstrate each of the criteria during the relevant time period.   Moreover, the evidence as to the various criteria differs between Plaintiff's treating providers and also varies at different relevant time periods.   I find that the ALJ did not err in evaluating whether Plaintiff's impairments  met or equaled in severity any impairment in the Listing of Impairments.

Plaintiff points to the ALJ's statement that there was "virtually no medical care since March 2003" as erroneous.  Tr. 22.  Plaintiff notes that she provided the Appeals Council with over 100 pages of additional evidence, including medical records.  However, Plaintiff admits that "much of 2003 was spent by the Plaintiff simply trying to relieve her pain."  Pl. Brief at 19.  The record demonstrates that the ALJ did not err in making this statement.  The ALJ notes that subsequent records indicate that Plaintiff was treated for a respiratory infection by a family practitioner in May 2003.  Tr. 21.  The additional evidence provided, which was considered by the Appeals Council, does not demonstrate that Plaintiff's impairments were disabling for a twelve-month period.

Plaintiff also claims that the ALJ erred in evaluating her credibility and subjective allegations.  Plaintiff specifically claims that the ALJ erred in finding that Plaintiff's subjective

allegations as to her limitations were inconsistent with the medications and measures she has taken to alleviate her pain.

Pursuant to Social Security Ruling 96-7p, the adjudicator is required to go through a two-step process in evaluating a claimant's symptoms. (Social Security Ruling 96-7p, July 2, 1996)("SSR 96-7p"). The ALJ must first:

> consider whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the individual's pain or other symptoms. . . . Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

The ALJ may consider various factors in assessing a claimant's credibility, including the individual's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; any palliative measures used to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *Id*.

The ALJ specifically noted that he evaluated Plaintiff's testimony and other statements regarding her daily activities, restrictions, and symptoms; the location, duration, frequency, and intensity of Plaintiff's subjective complaints; the precipitating and aggravating factors; the type, dosage, effectiveness, and side-effects of medication; the prescribed regimen; and any other palliative measures that Plaintiff may use, citing 20 C.F.R. § 404.1529 and SSR 96-7p. Tr. 22. In

his decision, the ALJ found that Plaintiff's testimony was not credible in part — only insofar as she alleged that her impairments limited her from performing any work activity. *Id*. He discussed the medical findings and compared them with Plaintiff's pain complaints, her subjective allegations of limitations, and her reported activities. *Id*. He also noted the lack of medical care for her back impairments since March 2003. *Id*. He indicated that her complaints of pain and the subjective allegations of severe limitations were not consistent with her activities. *Id*. The ALJ also noted that following her recovery from her surgeries, Plaintiff has not attempted conservative measures such as physical therapy, further injections, etc., and stated that her pain medications did not include narcotics or opiates, which he reasoned was not consistent with her allegations of unrelenting pain. *Id*. The record demonstrates that Plaintiff was indeed prescribed Vioxx, Soma, and Darvocet for her pain after her alleged onset date. Tr. 263. The additional records indicate, as noted previously, that Plaintiff underwent injections to relieve her knee pain. Tr. 340-50. Plaintiff's family practitioner, Dr. Shultz, refilled her prescriptions. The record also indicates that in September 2004 she consulted with Dr. George and Dr. Norman J. Dozier about further surgery versus a dorsal column stimulator or a pain medication pump. Tr. 385, 390. While not all of these records were before the ALJ at the time of his decision, a review of them indicates that the ALJ did not err in evaluating Plaintiff's subjective complaints. The ALJ discussed several factors in assessing Plaintiff's subjective complaints and in making his credibility determination. Tr. 22. At the hearing, he asked Plaintiff about her pain and the actions which exacerbate it, including holding her neck in a fixed position, looking up or down, and side to side movement of the neck. Tr. 400-01. He incorporated limitations into his RFC assessment which reflected Plaintiff's complaints. He also questioned Plaintiff about her treatment at the time of the hearing, eliciting testimony indicating that Dr. Shultz was providing her care at the time. Tr. 402. Plaintiff testified that her pain after the back surgery was exacerbated by staying in one position too long and indicated that she had to rotate activity. Tr. 402-03. This

was also reflected in the RFC assessment.  Plaintiff also testified that she experienced increased pain with lifting items weighing over 10 pounds and with lifting with the right hand.  Tr. 403.  The RFC assessment also reflects these limitations.  The record demonstrates that the ALJ appropriately considered many factors in evaluating Plaintiff's subjective complaints and in making his credibility determination.   The record further demonstrates that his credibility determination was supported by substantial evidence in the record.  The ALJ properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record.  *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).  The ALJ did not err in considering Plaintiff's subjective complaints, and he appropriately considered the entire case record, "including the objective medical evidence, the individual's own statements about symptoms, statements, and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record," in making his credibility determination, and in determining the weight to give to each piece of evidence.  Moreover, although not all of the evidence before this court was before the ALJ at the time of his decision, consideration of such evidence does not demonstrate that the ALJ's evaluation of Plaintiff's subjective complaints of pain and her allegations as to her limitations was not supported by substantial evidence. The ALJ included information about Plaintiff's symptoms, medications, treatments, activities, and limitations, both as reported by Plaintiff and as reflected in the record.  He incorporated limitations supported by the record in making his RFC finding by limiting Plaintiff to a reduced range of work at the sedentary exertional level.  Moreover, the ALJ's RFC finding and evaluation of the record as a whole reflected his credibility determination.  Questions of credibility are the responsibility of the ALJ to resolve.  *Masterson*, 309 F.3d at 272.  Upon consideration of the record as a whole, I find that the ALJ did not err in weighing and considering Plaintiff's testimony and subjective complaints and reports of

her symptoms, pain, and limitations, and his credibility findings are supported by substantial evidence in the record.

Plaintiff also argues that there is no evidence in the record demonstrating that she can perform the work activities in the manner suggested by her RFC assessment.  She argues that she can only engaged in activities for a little while before she has to lie down or take medication for pain.  The ALJ ultimately found that Plaintiff's allegations of complete inability to work were not entirely credible.  Having found that the ALJ did not err in evaluating Plaintiff's subjective complaints regarding the limitations imposed by her impairments, I conclude that the ALJ did not err in finding that Plaintiff retained the RFC for a limited range of work at the sedentary exertional level.  Although Plaintiff argues that there is no evidence in the record to support the ALJ's conclusion that Plaintiff could work a full day on a continuing basis, this conclusion and his RFC assessment are based in part on his credibility determination, the medical evidence, and Plaintiff's report of her own activities.  The ALJ accommodated those limitations that Plaintiff testified to in his RFC assessment.   The medical record, beyond the conclusory statements of the doctors as to disability, does not establish that Plaintiff was unable to engage in these activities on a sustained and continuing basis.  I find that the ALJ did not err in finding that Plaintiff could perform a limited range of sedentary work on a continuing and sustained basis.

Plaintiff also argues that the ALJ wrongly concluded that there was no evidence that Plaintiff's condition progressed and that she required another surgery.  As Plaintiff notes, the ALJ did indeed indicate that Plaintiff had good results from her surgeries, which was supported by statements by Dr. George. Subsequent records from September 2004 indicate that she developed another herniated disk.  The record also demonstrates that Plaintiff did not seek further care from her treating specialists for her back after March 2003 until May 2004.  Clearly, the subsequent medical evidence related to Plaintiff's back impairment is relevant insofar as it may bear upon the

severity of the Plaintiff's condition during the time period in question. *Ivy v. Sullivan,* 898 F.2d 1045, 1049 (5th Cir. 1990). However, the evidence submitted specifically involves a subsequent deterioration of Plaintiff's condition. *See generally, Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir.1994); *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989). Dr. George indicated in his September 22, 2004, letter that Plaintiff experienced a severe worsening of her pain after June 2004. Dr. Dozier indicated in his progress note that he had not seen Plaintiff since May 14, 2002. Tr. 374. He noted that since that time, Plaintiff had undergone two surgeries, had done better after each surgery, and was able to tolerate her pain better. *Id.*

Plaintiff argues that the ALJ erred by failing to appropriately consider the opinions of her treating physicians on her ability to perform a job. The record demonstrates that both of these physicians opined that Plaintiff was disabled or unable to work. Tr. 208, 210, 212, 337. The record further indicates that Dr. George indicated that "it is highly likely that [Plaintiff] will never be able to regain her work capacity in light of the severity and progressive nature of her disease." Tr. 212. Dr. George also indicated that Plaintiff had a high probability of degenerating in the future. TR. 272-73. The ALJ stated that he declined to accept the treating source's opinion as to disability "inasmuch as the clinical evidence utterly fails to corroborate this dire prognosis." Tr. 20.

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory,

is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456.

Unless the Commissioner gives a treating source's opinion controlling weight, the Commissioner will consider six factors in deciding the weight to give to any medical opinion. 20 CFR § 404.1527(d). The Fifth Circuit held in *Newton* that "an ALJ is required to consider each of the [six] factors before declining to give any weight to the opinions of the claimant's treating specialist." *Newton,* 209 F.3d at 456. Thus, the ALJ is required to consider the six factors if he does not give the opinion of a treating specialist any weight.

However, this requirement applies only to medical opinions and does not apply to conclusory statements that a claimant is disabled. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). First, "[a]mong the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.' These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" *Id.* (citing 20 C.F.R. § 404.1527(e)(1)). Thus, the ALJ was not required to apply the six factor analysis discussed in *Newton* to any conclusory statement about disability or inability to work, including statements by Dr. George or Dr. Shultz indicating that Plaintiff is disabled or unable to work, nor was he required to give such statements special weight. Even if the subsequent medical records indicate that Plaintiff experienced new back problems in 2004, the ALJ is not required to accept or give special weight to Dr. George's statement indicating that it was "highly unlikely" that Plaintiff would be able to return to work. Plaintiff correctly argues that the ALJ is required to give controlling weight to the medical opinion of a treating source which is supported by medically acceptable evidence in the record. However, the opinions of Drs. George and Schultz indicating that Plaintiff was disabled or unable to work were not medical opinions entitled to deference under *Newton* and 20 C.F.R. § 404.1527. The ALJ

did not err in evaluating and considering the opinions of Dr. George and Dr. Shultz insofar as they indicated that Plaintiff was disabled or unable to work.

Even if the ALJ erred by not reviewing the six factors pursuant to Social Security Ruling 96-5p before giving no weight to the treating physicians' opinions that Plaintiff was disabled or unable to work, Plaintiff would be required to show prejudice from that error to be entitled to relief. *Hall v. Schweiker,* 660 F.2d 116, 119 (5th Cir. 1981). Plaintiff has not shown that any prejudice resulted from such failure to review regarding the opinions on disability or inability to work, which are ultimate issues reserved to the ALJ.

I find that the ALJ did not err in considering and evaluating the opinions of Plaintiff's treating physicians, nor did he err in considering Plaintiff's subjective allegations and the limitations imposed by her impairments.  I find that Plaintiff has shown no prejudice resulting from the failure to review the six factors before giving no weight to the treating physicians' opinions that Plaintiff was disabled or unable to work. I further find that he did not err in making his RFC assessment, and the ALJ's decision is supported by substantial evidence in the record.

## IV.   CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1) and Rule 4 of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy.  A party filing objections must specifically identify

those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 7th day of March, 2006.

**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**